**DAVOUD RAKHSHAN, Petitioner**

v.

**TUILEFANO VAELA'A, Commissioner of Public Safety and FUE TUITELELEAPAGA, Warden, Tafuna Correctional Facility, Respondents**

High Court of American Samoa
Trial Division

CA No. 104-90

February 11, 1991

Before REES, Associate Justice, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Petitioner, William H. Reardon
For Respondent, Aitofele T. Sunia

The Government has filed a response to the Court's order of February 1, 1991, proposing to protect the petitioner from inmate Afoa Mata'itusi by confining Afoa to his cell at all times except for two hours a day, during which he shall do physical exercises and attend religious services. During these times, petitioner "will be inside an enclosed building with other detainees." The government also proposes that when the petitioner himself "comes out to do his exercises, all other inmates are locked in their cells."

Counsel for petitioner has filed a response, suggesting that it is unreasonable to lock petitioner up for two hours every day while Afoa exercises and that Afoa should exercise and attend religious services in his cell. The response also objects to an implication in the Government's submission to the effect that petitioner may be placed in some sort of special confinement not only during Afoa's exercise periods but also at various other times.

The Court approves the Government's proposal, with the following conditions and observations:

1) Contrary to the suggestion by petitioner's counsel, it is not unreasonable to confine petitioner and other non-dangerous inmates within an enclosed building for two hours a day while Afoa does his exercises and attends religious services.

2) As the Court has stated in its previous order, however, petitioner must be allowed the same freedom of movement within the Correctional Facility as is allowed to other non-dangerous inmates. The solution to the problem of threats by certain inmates against others is not to keep the ones who have been threatened in solitary confinement or in some similar arrangement with a different name. If there are other inmates besides Afoa whose criminal record and/or past behavior in prison suggest that they represent a danger to petitioner or to other inmates, they should be confined in whatever way is necessary to protect the other inmates.

3) The Government's proposal states that the two hours designated for Afoa's exercise and religious attendance "will be strictly kept by guards." This is a condition of our approval of the Government's proposal. A further condition is that Afoa be attended by a guard or guards at all times during these designated periods.

4) Afoa and other dangerous inmates must not be allowed access to bush knives or any other sort of knives or potential weapons, either inside or outside their cells.

5) The Commissioner, the Warden, and the Attorney General are ordered to monitor the implementation 'of this plan at frequent intervals to ensure that petitioner and other non-dangerous inmates are genuinely protected from those whose criminal records and/or other past behavior indicate dangerousness. If at any time it should appear that the Government cannot absolutely ensure the safety of the non-dangerous

47

inmates by segregation of the dangerous inmates within the facility, arrangements shall be made for the immediate transfer of all dangerous inmates to a secure facility in the United States or elsewhere.

It is the Court's considered opinion that transferring the handful of really vicious criminals in the Correctional Facility to a secure facility in the United States would be by far the best solution to the present case and to others like it. The Court is informed that the Government has had for some years a Memorandum of Understanding with the federal government allowing for such transfers, and that the Memorandum is renewed every year but that the Government has not exercised its rights under the Memorandum for some years. It appears from the Government's response to our order of February 1 that the Government's reluctance to take this step is motivated entirely by financial considerations. It is undoubtedly less expensive to keep an inmate in the Tafuna Correctional Facility than in a high-security facility of the sort generally deemed suitable for violent criminals. The Government has the discretion to save money in this or in any other way provided that it can do so without violating its constitutional and legal obligations; in this case the obligation to protect fellow inmates and members of the general public from those whom it has taken within its custody. *See American Samoa Government v. Agasiva*, 6 A.S.R.2d 32 (1987).

The Government generally finds the money to do the things it really wants to do. It is essential that priorities be ordered so as to ensure that the Government's primary functions --- and particularly the fulfilment of its constitutional and legal obligations --- are not neglected in favor of more exciting but less important uses of public resources. However, a court should not overrule the discretion of the political branches of government with respect to such ordering until and unless it is clearly shown that this is necessary to protect a constitutional or legal right of a party to a case properly before the Court. In the present case the Government assures us that it can protect the petitioner and others like him without transferring dangerous inmates to a facility designed for such inmates and without unreasonable restrictions on petitioner's freedom of movement within the Correctional Facility. We take the Government at its word. It is essential that this word be kept.

The Government's proposal is approved, with the conditions stated herein.

It is so ordered.